IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>DAMIEN WELLS,<br><br>　　　　　　　　Defendant. | 8:24CR49<br><br>MEMORANDUM<br>AND ORDER |

　　　　This matter is before the Court on defendant Damien Wells's ("Wells") Motion to Suppress statements (Filing No. 71), Motion to Suppress cell-phone content (Filing No. 73), and Motion to Suppress suitcase contents (Filing No. 75). Those motions were assigned to a magistrate judge,[1] who held an evidentiary hearing on the matter on June 23, 2025 (Filing No. 94).[2] *See* 28 U.S.C. § 636(b)(1) (allowing a district judge to "designate a magistrate judge to conduct hearings . . . and to submit" proposed findings and recommendations for the disposition of a motion to suppress evidence). The magistrate judge subsequently issued his Findings and Recommendation (Filing No. 100) recommending that Wells's motion to suppress statements be granted in part and denied in part and that the remaining motions be denied. After carefully considering Wells's

---

[1] The Honorable Ryan C. Carson, United States Magistrate Judge for the District of Nebraska.

[2] The Court notes that Deputy United States Marshals ("Marshals") removed Wells from the courtroom after repeated disruptive behavior and moved him to an isolated cell in the courthouse. They provided him with a closed-circuit television with sound and video so he could view the proceedings. Wells could signal to the Marshals if he wanted to meet with his attorney. The magistrate judge overruled the government's oral motion to dismiss the motions to suppress at that time and proceeded with the hearing, finding that Wells's conduct constituted a waiver of his right to personally appear. *See Illinois v. Allen*, 397 U.S. 337, 343 (1970) (holding that a defendant who continues disruptive behavior after being warned by a judge "that he will be removed if he continues his disruptive behavior" "can lose his right to be present" in the courtroom).

objections and "mak[ing] a de novo determination of those portions of the report" to which Wells objects, 28 U.S.C. § 636(b)(1)(C), the Court overrules his objections and accepts the Findings and Recommendation.

## I. BACKGROUND

Just after midnight on March 23, 2023, an unidentified man and woman approached Southwest Airlines ("Southwest") employee Jennifer Haynes ("Haynes") at Eppley Airport in Omaha, Nebraska, and asked for help locating their bag. The couple showed Haynes a photo of a blue suitcase on a cell phone. When she asked them for their identification or flight confirmation number to locate the suitcase, the couple denied having either, stating they had not been on a flight. Haynes then explained that per Southwest policy, only ticketed passengers could claim bags. The couple left. Due to the suspicious nature of the incident, Haynes called Eppley Airport Police to keep an eye on the baggage claim area. Sergeant Chad Sprunk ("Sergeant Sprunk"), who testified that he is a "police sergeant at Eppley Airfield," responded and stayed in the area until the next flight arrived.[3]

About fifteen to twenty minutes later, the next flight arrived from Phoenix, and the blue suitcase came out onto the carousel. Haynes retrieved the suitcase and locked it in the baggage office. During this time, Sergeant Sprunk was nearby but was not inside the baggage office with Haynes. Sergeant Sprunk left the baggage claim area when the suitcase was secured. Haynes looked up the reservation number on the blue suitcase and discovered the passenger associated with it was "Analise Ireton." The suitcase was self-checked at a Southwest kiosk at the Phoenix airport, but the passenger never boarded the flight. Haynes began to inventory the bag but paused to attend to the next flight. She closed the bag, intending to return to it later.

---

[3]Although it is not entirely clear from the record whether Sergeant Sprunk works for a government agency or Eppley Airfield, both parties seem to agree that he is a law enforcement officer.

Haynes later finished her inventory of the suitcase, noting clothing and something inside its liner. She unzipped the liner and found a gray garment bag that was heavy on the bottom. She opened the garment bag and observed three or four packages that looked like drugs. Two of the packages appeared to contain a white powdery substance and another was a vacuum-sealed bag of blue pills. She closed the suitcase and again called airport police. Sergeant Sprunk returned and observed the packages, all of which appeared to him to be illegal drugs. Neither Sergeant Sprunk nor Haynes handled the packages. Sergeant Sprunk then contacted the local Drug Enforcement Administration ("DEA") Task Force and secured the blue suitcase in a separate room.

After that, Haynes returned to the carousel to retrieve another bag. She was confronted by a man, later identified as Wells, who appeared angry and yelled at her about finding his blue bag. While Haynes spoke to Wells, another baggage agent called the airport police to notify them that a man had come to claim the suitcase who appeared "irate." The officers placed Wells under arrest and removed him from the baggage claim area.

Nebraska State Patrol Officers Steven Peck ("Officer Peck") and Nick Bonney ("Officer Bonney"), who also serve as DEA Task Force Officers, responded to a call from Sergeant Sprunk. Before questioning Wells, the officers took custody of the blue suitcase, found the suspected drugs, and field tested the white powder, which returned positive for cocaine.

Officer Peck then began advising Wells of his rights under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). After the second sentence, Wells invoked his right to remain silent and his right to counsel. Officer Peck stopped giving the *Miranda* warnings because it was clear Wells had knowingly invoked his rights. Both parties agree that the rights advisement was incomplete, and that Wells had invoked his right to remain silent. Officer Bonney then asked Wells additional questions, including his date of birth, phone numbers, and whether he still lived at 3152 Paxton Boulevard in Omaha, Nebraska. Wells responded that he did.

3

Officer Peck testified at the hearing that before Wells's interview, he and Officer Bonney suspected Wells was linked to an earlier United Parcel Service delivery that had yielded some drugs to an address on Paxton. Officer Peck later determined that Wells's mother is the listed owner of the house on Paxton Boulevard. Additional database searches linked Wells to a house at 3620 Ellison Avenue in Omaha, Nebraska.

Incident to Wells's arrest, officers Peck and Bonney seized two cell phones in Wells's possession. The very next day, a Douglas County District Court judge issued a search warrant for the phones. Officer Peck then provided the two cell phones to the DEA Tactical Operations Group ("TOG") for analysis. At that time, TOG could not break the passcode or retrieve any content from the phones because of software limitations. TOG told Peck to check back in six months. On April 3, 2023, Peck filed a return of the March 24, 2023 warrant, indicating it was not served. No phone extractions were completed at that time.

Nearly six months later, the cell phones remained in DEA custody. On October 19, 2023, Officer Peck resubmitted the search warrant and updated the probable-cause statement to include information that he believed TOG now possessed the software to search the two phones. TOG broke the passcodes and obtained information from the cell phones pursuant to the October search warrant. The cell phones contained, among other things, (1) text messages with pictures of the blue suitcase; (2) text messages stating that the name on the bag will be Analise Ireton and that the bag would be on Southwest flight 1792; and (3) an image of a Western Union receipt for the transfer of funds to Analise Ireton. Wells has been in law-enforcement custody from his detention hearing on April 4, 2024, to present. He was previously in state custody. At no time did Wells or anyone else request the return of the phones or inquire about them.

Wells was indicted on September 18, 2024, on one count of possession with intent to distribute cocaine and 100 grams or more of fentanyl analogue, in violation of 21 U.S.C. § 841(a)(1) and (b)(1), and "attempt to possess, with intent to distribute 100 grams or more

of fentanyl analogue, a Schedule I controlled substance," in violation of 21 U.S.C. 846 (Filing No. 55). Wells moved to suppress the evidence against him on February 24, 2025, arguing law enforcement (1) obtained statements in violation of his rights under the Fifth Amendment to the United States Constitution, pursuant to *Miranda* (2) unreasonably delayed in obtaining the second warrant for his phones in violation his rights under the Fourth Amendment to the United States Constitution, and (3) violated his Fourth Amendment rights by seizing and searching the suitcase without a warrant. The government opposes suppression on all grounds (Filing No. 86). Apart from the motion to suppress the statements regarding Paxton Boulevard, the magistrate judge recommends all of Wells's motions to suppress be denied (Filing No. 100).

Wells raises four objections (Filing No. 101) to the magistrate judge's report. He argues that (1) the airline employees were acting in concert with police to seize and search the blue suitcase; (2) police unconstitutionally expanded the seizure and search of the suitcase by removing it to a secure area and field testing the white-powder packages; (3) the search of the suitcase was a trespassory search under *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012); and (4) the cell-phone data should be suppressed based on the balancing test used in *United States v. Fife*, 356 F.Supp.2d 790, 798, 803 (N.D. Iowa 2019). Unsurprisingly, the government argues Wells's objections should be overruled (Filing No. 102).

**II.   DISCUSSION**

This Court reviews de novo the magistrate judge's Findings and Recommendation under 28 U.S.C. § 636(b)(1)(C). To invoke de novo review, the objecting party "must specify (1) the parts of the order or findings and recommendations to which the party objects and (2) the legal basis of the objections." NECrimR 59.2(a). If neither party objects, the Court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Where objections are general in nature or lack the specificity required by § 636(b)(1), de novo review is not required. *See Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). At any rate,

the Court retains "substantial control over the ultimate disposition of matters referred to a magistrate." *Id.*

### A. Alleged Government Action

Wells first argues that the seizure and search of his blue suitcase required a warrant under the Fourth Amendment. He also challenges the magistrate judge's conclusion that Haynes acted independently from Sergeant Sprunk when she seized and searched the suitcase. Wells contends this case is distinguishable from *United States v. Bowman*, 907 F.2d 63 (8th Cir. 1990), in which an airline employee involved law enforcement after independently seizing and searching a suitcase because Haynes involved Sergeant Sprunk *before* the seizure and search even began. According to Wells, "input and oversight can be inferred" because law enforcement "had knowledge of the decision to open the suitcase" and were nearby before Haynes searched the suitcase.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[A] seizure occurs when law enforcement 'meaningful[ly] interfere[s] with an individual's possessory interests in property[.]'" *United States v. Green*, 9 F.4th 682, 688 (8th Cir. 2021) (quoting *United States v. Va Lerie*, 424 F.3d 694, 706 (8th Cir. 2005)). However, the Fourth Amendment generally only applies to government actors, not private citizens like Haynes. *See United States v. Ringland*, 966 F.3d 731, 735 (8th Circuit 2020) ("Fourth Amendment protection extends only to actions undertaken by government officials or those acting at the direction of some official."). And when a government official like Sergeant Sprunk repeats a search done by a private party, it is not a search under the private-party search doctrine. *See United States v. Jacobsen*, 466 U.S. 109, 120 (1984) (holding that repeating a FedEx employee's search of a box is "not a 'search' within the meaning of the Fourth Amendment" when the government "learn[s] nothing that had not previously been learned during the private search" even though the private searcher had returned the suspected drugs and packaging into the box and law enforcement removed and even destroyed a small

6

amount of powder to test for drugs). Thus, Wells would need to show that Haynes was essentially a government official, or acting at the government's direction, to prevail on this claim.

"Whether [Haynes] should be deemed an agent or instrument of the government for Fourth Amendment purposes necessarily turns on the degree of the government's participation in [her] activities," based on the totality of the circumstances. *Ringland*, 966 F.3d at 735 (quoting *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010)). The Court considers whether (1) "the government had knowledge of and acquiesced in" the search and seizure; (2) Haynes "intended to assist law enforcement or instead acted to further [her] own purposes;" and (3) Haynes "acted at the government's request." *Id.*

Wells has not established that Haynes acted only "to assist law enforcement" or "at the government's request." *Ringland*, 966 F.3d at 735. Haynes testified that she considered the unidentified couple's behavior suspicious and made the call to Sergeant Sprunk on her own volition. She removed the suitcase from the carousel and initially searched it in the baggage office by herself. Haynes only called law enforcement into the baggage office after she thought she found drugs. Sergeant Sprunk did not handle the suspected drugs and did not participate in opening or searching the suitcase. He merely closed the suitcase and removed it to a secure room. Haynes testified that all those actions complied with Southwest policy and procedure. Mere knowledge by Sergeant Sprunk that the search was taking place is not enough to establish that law enforcement directed the search. *See Ringland*, 966 F.3d at 736 (concluding that a private party "did not become a government agent merely because" it shared a mutual goal with the government and the statutory scheme encouraged the private party to engage in affirmative searches because the encouragement was "not so strong[]" as to be coercive).

The Court agrees with the magistrate judge that Haynes does not qualify as a government official for purposes of the Fourth Amendment. While the government had some knowledge of Haynes's activities, and did not prevent her from searching the

7

suitcase, that is not enough for government action. *See United States v. Highbull*, 894 F.3d 988, 992 ("[W]e have been unwilling to impute agency where the private actor was not 'motivated solely or even primarily by the intent to aid the officers' and where the government did not request the challenged search." (quoting *United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004))). Therefore, the government's subsequent search of the suitcase did not violate the Fourth Amendment because of Haynes's private-party search. *See Ringland*, 966 F.3d at 736 (concluding "an ensuing police intrusion that stays within the limits of the private search is not a search for Fourth Amendment purposes." (quoting *United States v. Miller*, 152 F.3d 813, 815 (8th Cir. 1998))).

### B.    Expansion of the Suitcase Seizure and Search

Wells next argues that even if Haynes was not collaborating with law enforcement, "the Eppley Airfield Police and/or the DEA task-force officers" unconstitutionally expanded the search and seizure of the suitcase by "remov[ing] it to a secure area in the airport-police's spaces." This action coupled with field testing the cocaine, Wells claims, "amounted to a more expansive" search and seizure requiring a warrant. Wells critiques the magistrate judge's reliance on *Bowman*, 907 F.2d at 64-65, and argues *United States v. Rouse*, 148 F.3d 1040, 1041 (8th Cir. 1998), in which the Eighth Circuit concluded that law enforcement's discovery of additional items constituted an unlawful expansion of a private-party search of a suitcase, controls this case.

The Court agrees with the magistrate judge that Wells's requests to suppress the suitcase contents as an unlawful expansion of the initial search should be denied for the reasons stated by the magistrate judge in his Findings and Recommendation. *Rouse* does not require a contrary conclusion. In *Rouse*, an airline employee found some suspicious ID cards and blank social-security cards in a suitcase. 148 F.3d at 1041. Law enforcement repeated the search and uncovered a laminating machine that the airline employee had not discovered. *Id.* That is not what happened here. Like *Bowman*, the suitcase in this case "had already been opened by an airline employee and [law enforcement] was merely invited to examine [illicit drugs] the employee had already exposed[.]" 907 F.3d at 65.

### C. Search under *Jones*

Wells's next objection relies on the Supreme Court's watershed decision in *United States v. Jones*. In *Jones*, the Supreme Court explained that "the *Katz* reasonable-expectation-of-privacy test has been *added to*, but not *substituted for*, the common-law trespassory test." 565 U.S. at 409 (emphasis in original). That case involved the government physically placing a GPS tracker on a suspect's car to track his movements. *Id.* at 403. The Supreme Court held that although there is no reasonable expectation of privacy when one travels on public roads, "where, as here, the Government obtains information by physically intruding on a constitutionally protected area, such a search has undoubtedly occurred." *Id.* at 406 n.3. While the reasonable-expectation-of-privacy test articulated in *Katz v. United States*, 389 U.S. 347, 360 (1967) is still good law, "Fourth Amendment rights do not rise or fall with the *Katz* formulation[.]" *Jones*, 565 U.S. at 406.

The Supreme Court reaffirmed the property-based test in *Florida v. Jardines*, which held that bringing "trained police dogs" onto the defendant's porch to reveal whether there were drugs inside the house "is a 'search' within the meaning of the Fourth Amendment" because it was a physical intrusion onto a constitutionally protected area to obtain information. *Florida v. Jardines*, 569 U.S. 1, 11-12 (2013). Even though a dog sniff itself is not a search because it does not implicate any legitimate privacy interest by revealing the possession of contraband, *see United States v. Place*, 462 U.S. 696, 707 (1983); *see also Jacobsen*, 466 U.S. at 123; *Illinois v. Caballes*, 543 U.S. 405, 409 (2005), it can become a search when it takes place on a "constitutionally protected area." *Jardines*, 569 U.S. at 11. That is because the government is "physically intruding" in order "obtain[] information." *Jones*, 565 U.S. at 406 n.3. In cases that involve "officers learn[ing] what they learned only by physically intruding on [the defendant's] property" courts "need not decide whether the officers' investigation" violated a reasonable "expectation of privacy under *Katz*" because "physically intruding on constitutionally protected areas" "to gather evidence is enough to establish that a search occurred." *Jardines*, 569 U.S. at 11.

Wells challenges the search and seizure of the suitcase by arguing that it is a search under the property-based understanding of the Fourth Amendment. *See Jones*, 565 U.S. at 406 n.3; *Jardines*, 569 U.S. at 11. As Wells sees it, *Jacobsen* "does not save the search and seizure of the suitcase" because *Jacobsen*'s reasoning that field testing suspected drugs does not violate a privacy expectation was under the *Katz* test. The *Jones/Jardines* property-based approach is independent from the *Katz* reasonable-expectation-of-privacy test. *Jones*, 565 U.S. at 406; *Jardines*, 569 U.S. at 11. Thus, even if the search and seizure of the suitcase contents is permissible under *Jacobsen*, Wells argues, it would not be under more recent Supreme Court precedent.

In *Jacobsen*, the Supreme Court said no search had taken place when law enforcement exceeded the scope of a package search previously performed by FedEx employees by removing and destroying a small amount of powder to conduct a drug test. *Jacobsen*, 466 U.S. at 122-23. The *Jacobsen* court relied on *Katz*, reasoning that there was no "reasonable expectation of privacy" in concealing whether something is contraband. *Id.* However, nearly thirty years later in *Jones*, the Supreme Court clarified that the *Katz* test is only one way to determine if a search has occurred. *Jones*, 565 U.S. at 409.

In that vein, Wells argues, drug testing the white packages from his suitcase was a "physical[] intru[sion] upon a constitutionally protected area to obtain information." Wells's argument that *Jones*, and not *Jacobsen*, should control this case is not entirely without merit. After all, a package is an "effect," *Jacobsen*, 466 U.S. at 114, and drug testing the packages requires physically handling them and destroying a small amount of powder for testing. And while Wells has "no legitimate privacy interest" in "whether a substance is [contraband]," *Jacobsen*, 466 U.S. at 123, "Fourth Amendment rights do not rise or fall with the *Katz* formulation[.]" *Jones*, 565 U.S. at 406. As then-Judge Neil Gorsuch pointed out when he was sitting on the Tenth Circuit, *Jacobsen*'s status is "uncertain" after *Jones*. *United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016)

(Gorsuch, J.) (noting that "in light of *Jones*" "it seems at least possible the [Supreme] Court today would find that a 'search' did take place [in *Jacobsen*].").

Despite this tension between the private-party search doctrine and the property-based approach in *Jones*, the Court agrees with the magistrate judge that the private-party search doctrine is still good law and controls this case. *Jacobsen* is regularly cited by the Eighth Circuit in other search contexts. *See*, *e.g.*, *Ringland*, 966 F.3d 731. Wells's case is closer to the facts in *Jacobsen* than the facts of *Jones*. Rightly or wrongly decided, it is up to the Supreme Court, not this Court, to overrule *Jacobsen*. *See generally Hennepin Cnty. v. Fed. Nat. Mortg. Ass'n*, 742 F.3d 818, 823 (8th Cir. 2014) ("Lower courts must follow Supreme Court precedent which directly applies to a case before them, even if such precedent might appear 'to rest on reasons rejected in some other line of decisions.'" (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484-85 (1989)); *Iowa Right To Life Comm., Inc. v. Tooker*, 717 F.3d 576, 603 (8th Cir. 2013) ("If precedent of the Supreme Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls." (internal quotation marks and brackets omitted)). Even though *Jacobsen* "rests on reasons" that have since been clarified and expounded upon, *Jacobsen* "has direct application in [this] case" and this Court is bound to follow it. *Tooker*, 717 F.3d at 603.

### D.   Cell-Phone Data

Finally, Wells believes that the magistrate judge should have applied the Eleventh Circuit balancing test cited by *United States v. Fife*, 356 F.Supp.2d 790 (N.D. Iowa 2019) in considering Wells's motion to suppress the cell-phone data because *Fife* "is a more factually analogous (and more compelling case than *United States v. Bragg*, 44 F.4th 1067 (8th Cir. 2022)." Wells argues that he "maintained a property interest in these phones from March 23, 2023 through October 27, 2023" while they were in DEA custody and that the six-month delay between the first and the second search warrants was unreasonable under the Fourth Amendment.

To determine whether Officer Peck "unreasonably delayed in applying for a warrant to search the [phones]" the Court considers the totality of the circumstances "which requires [balancing] 'privacy-related and law enforcement-related concerns.'" *United States v. Bragg*, 44 F.4th 1067, 1072 (8th Cir. 2022) (quoting *United States v. Mays*, 993 F.3d 607, 616-17). The Court considers "the significance of the interference with [Wells's] possessory interest, the duration of the delay, whether [he] consented to the seizure, and the nature of the seized property." *Mays*, 993 F.3d at 617 (citations omitted). The Court then balances Wells's privacy-related concerns against "the government's legitimate interest in holding the [phones] as evidence, the nature and complexity of the investigation, the quality of the warrant application and the amount of time" the warrant application should take to prepare, and "any other evidence proving or disproving law enforcement's diligence in obtaining the warrant." *Id.* (citations omitted).

Wells's reliance on *United States v. Fife* is misplaced. First, this Court is bound by the Eighth Circuit and declines to follow the Eleventh Circuit. Second, the facts of *Fife* are distinguishable from Wells's case. In *Fife*, the trial court granted the defendant's motion to suppress evidence on a hard drive, in part, because it was not clear the defendant "had any idea police had the hard drive." 356 F.Supp.2d at 794. The defendant's family had turned his hard drive over to law enforcement who held it for over a year without the defendant knowing. *Id.* at 793. The government gave "no reason for the delay in obtaining a warrant." *Id.* at 799. And law enforcement in that case failed to investigate "simply because [they] did not believe the matter was time sensitive." *Id.*

In this case, Wells knew that law enforcement had his phones because they were seized from his person when he was arrested. Neither Wells nor anyone else requested the phones return. What's more, the DEA officers diligently worked to pursue multiple warrants—drafting and submitting the first warrant the day after the phones were seized and the second warrant as soon as TOG informed Officer Peck that the software had been updated. Even under the Eleventh Circuit balancing test from *United States v. Laist*, 702

F.3d 608, 613-14 (11th Cir. 2012), this Court agrees with the magistrate judge that the government's delay in obtaining the second search warrant was not unreasonable.

Finally, the Court notes Wells's general request that the Court "grant the ungranted parts of his motion to suppress [71], [73], and [75]" and that he "relies upon his previously filed brief in support of the motions to suppress." The Court finds the magistrate judge's remaining conclusions relating to the "ungranted parts" of Wells's motions are proper under de novo review. Having carefully reviewed the record in this matter, the Court agrees that Wells's motions should be granted in part and denied in part for the reasons stated above and by the magistrate judge. Accordingly,

IT IS ORDERED:

1. Defendant Damien Wells's objections (Filing No. 101) to the magistrate judge's Findings and Recommendation are overruled.
2. The magistrate judge's Findings and Recommendation (Filing No. 100) is accepted.
3. Wells's Motion to Suppress statements (Filing No. 71) is granted in part and denied in part. His acknowledgement that he resided at 3152 Paxton Boulevard should be suppressed. The motion should be denied in all other respects.
4. Wells's Motion to Suppress cell-phone content (Filing No. 73) and Motion to Suppress suitcase contents (Filing No. 75) are denied in their entirety.

Dated this 23rd day of September 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge