IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| United States of America,<br>Plaintiff,<br><br>v.<br><br>Damien Wells,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 8:24cr49<br><br>**Motion in limine #1** |

I maintain – and would ask the Court to recognize – a standing objection to my participation in this trial under the existing conditions. Specifically, no relationship exists between me and Damien Wells. He has never asked for counsel and has evinced at every turn that he does not want me to represent him at his jury trial. Mr. Wells's trial begins next Tuesday, October 27, 2026. I move *in limine* to renew my motion to withdraw, to assert a standing objection, and to ask the Court to recognize my standing objection. I ask that this motion/objection be heard and ruled upon before the trial begins.

**Facts**

The facts leading up to Court's denial of this same motion *in limine* (filed in November 2025) are well-documented. Since then – during my appeals and petitions to the Eighth Circuit Court of Appeals and the United States Supreme Court – there have been no substantive changes to my relationship with Mr. Wells.

Up to and including today, October 7, 2026, every time I "connect" with Mr. Wells on smartinmate.com – Douglas County Correctional Center's method of sending mail or messages – someone (presumably Mr. Wells) manually "disconnects" us. I still have to reapply to send/receive mail from him each time. During the

pendency of my interlocutory appeal (which was later restyled by the Eighth Circuit as a petition for a writ of mandamus), Mr. Wells and I had two brief smartinmate.com exchanges – not related to the substance of the litigation – in June 2026 and, at the conclusion them, Mr. Wells again disconnected us.

Mr. Wells refused to attend court with Judge Carson today.

As such, I still have not communicated with Damien Wells about the substance of this case.

**Analysis**

In all, Mr. Wells has steadfastly refused to speak to me in person since April 22, 2025. We have only spoken twice, for a total of no more than 20 minutes, and exchanged a handful of short messages in three years. He has refused at least ten in-person visits with me and seven letters (of the countless letters/messages I have sent).

Nebraska Rule of Professional Conduct § 3-501.1 requires me to be competent. "Competent representation requires the legal knowledge, skill, thoroughness, preparation and judgment reasonably necessary for the representation." *Id.* "Competent handling of a particular matter includes inquiry into and analysis of the *factual* and legal elements of the problem….It also includes adequate preparation." *Id.* at Comments, n. 5 (emphasis added). Rule § 3-501.4 requires me to communicate with Mr. Wells. I am required to "reasonably consult" with Mr. Wells about how his objectives are to be accomplished. Neb. R. Prof. Conduct § 3-501.4(a)(2). Rule § 3-501.4(b) requires me to "explain a matter to the extent reasonably necessary to

permit the client to make informed decisions regarding the representation." Finally, Rule § 3-501.16(a)(1) prohibits representation if "the representation will result in violation of the Rules of Professional Conduct or other law[.]"

Damien Wells's case will be called for trial on October 27, 2026. We have been unable to discuss critical matters related to that trial, including (but not at all limited to): the operative facts, our defense, his right to a speedy and public jury trial, his right to testify or to decline to testify, witnesses, and the potential ramifications of going to trial under federal sentencing law. I have been unable to discuss plea offers and overtures with Mr. Wells. I anticipate that, during trial, we will be unable to discuss jury selection, his decision whether to testify, and all the tactical matters that lawyers and clients discuss during trial.

In short, I am prevented from communicating with Mr. Wells. Without communication, I cannot render competent representation.

Moreover, I can find no evidence that Mr. Wells has ever *asked* the Court for court-appointed counsel. Not once in three years has Mr. Wells expressed any opinion other than that he did not want court-appointed counsel. And while disruptive behavior may be an inadequate reason to provide *new* counsel and may cause one to forfeit the right to be one's own counsel, this does not necessarily mean that the Court can force "unwanted counsel" upon a defendant.

"In federal courts, the right of self-representation has been protected by statute since the beginning of our Nation." *Faretta v. California,* 422 U.S. 806, 812 (1975). "[T]he Sixth Amendment right to the assistance of counsel implicitly

embodies a 'correlative right to dispense with a lawyer's help.'" *Id.* at 814 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Id.* at 819-820. The Sixth Amendment:

> speaks of the "assistance" of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the amendment, shall be an aid to a willing defendant – not an organ of the State interposed between an unwilling defendant and his right to defend himself personally.

*Id.* at 820.

> It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in several areas. This allocation can be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.

*Id.* at 820-21 (emphasis in original). "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the rights to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* at 835.

That said, the Eighth Circuit has held that "[a]n accused can waive his right to counsel by conduct." *United States v. Sanchez-Garcia,* 685 F.3d 745, 751 (8th Cir. 2012). In *Sanchez-Garcia*, the defendant, Torrance Bunch, hired a lawyer who later withdrew due to a conflict. When the court asked Mr. Bunch if he wanted to retain a new lawyer, accept a court-appointed lawyer, or proceed without counsel, Mr. Bunch

told the court he could not afford to hire another lawyer. 685 F.3d at 751. The court then presented Mr. Bunch with the two remaining options – court-appointed lawyer or *pro se* – and Bunch refused to respond. *Id.* The district court warned Bunch that "the worst thing [he] can probably do is try and represent himself in this matter," because "[i]t's difficult for a layperson to know about the Rules of Evidence and to know whether to speak and to know when not to speak." *Id.* The Eighth Circuit held that, in light of the district court's repeated warnings, "by repeatedly rejecting all options except self-representation, after having been warned of the consequences, Bunch 'necessarily chose self-representation.'" *Id.* (citing *King v. Bobby,* 433 F.3d 483, 492 (6th Cir. 2006)).

The most recent Eighth Circuit on this topic is *United States v. Willis*, 101 F.4th 577 (8th Cir. 2024). Initially, Willis complained to the magistrate judge that his counsel was not providing the defense of his choosing. 101 F.4th at 580. The magistrate judge ordered a *Faretta* hearing in person after Mr. Willis refused to leave his cell for a Zoom hearing. *Id.* at 580. The magistrate judge granted Willis's request, but when Willis "repeated[ly] assert[ed]…'sovereign citizen' arguments and defenses," the district court ruled that it considered sovereign-citizen arguments disruptive and that, by asserting them, Willis had "forfeited" his right to self-representation. *Id.* at 579. The district court then elevated stand-by counsel to actual counsel. *Id.* at 579.

Reviewing the district court's revocation of Willis's self-representation right *de novo*, the Eighth Circuit reversed, holding that the record hadn't reflected that he

had engaged in or would engage in the "serious and obstructionist misconduct" that *Faretta v. California* and Eighth Circuit precedent required. *Id.* at 579. The *Willis* Court framed the question in terms of whether the decision to revoke the self-representation right on the morning of trial violated Willis's Sixth Amendment right. *Id.* at 583. The *Willis* Court noted that the prevailing rule – that "self-representation can be disallowed or terminated with the defendant 'engages in serious obstructionist misconduct'" – is "often difficult to apply, particularly when, as in this case, the trial court is called upon to predict, prior to trial, whether the defendant, if allowed to represent himself at trial, will engage in serious obstructionist conduct." *Id.* at 583 (quoting *United States v. Mosley,* 607 F.3d 555, 558 (8th Cir. 2010); *United States v. Myers,* 503 F.3d 676, 681 (8th Cir. 2007); and *Faretta,* 422 U.S. at 834, n. 46). The Eighth Circuit distinguished "defiant or disruptive pretrial conduct that compromised or reflected an intent to delay timely completion of the criminal proceedings" from "a realistic fear" that Willis would argue frivolous legal theories to the jury. *Id.* at 583. The former could justify revocation of the self-representation right; the latter could not. *Id.*

Critically, the *Willis* Court emphasized timing, asking whether the defendant's frivolous theories were the sort of misconduct that warranted revocation "*before the trial even begins?*" *Id.* at 583 (emphasis in original). "Pretrial activity is relevant [to continued *pro se* status] only if it affords a strong indication that the defendant will disrupt the proceedings in the courtroom." *Id.* at 583-84 (*quoting United States v. Smith,* 830 F.3d 803, 810 (8th Cir. 2016)).

The *Willis* Court contrasted its (and *Smith's*) facts with those of cases where it had upheld revocations, including two that occurred pretrial, *i.e. United States v. Mabie,* 663 F.3d 322 (8th Cir. 2011) and *United States v. Atkins.* 52 F.4th 745 (8th Cir. 2022). "[I]n *Mabie*…[the] defendant…used his subpoena power to threaten and deter potential witnesses, repeatedly disrupted pretrial proceedings, 'was openly hostile, disrespectful to the court, an inattentive,' and threatened to assault appointed counsel after self-representation was denied." *Willis,* 101 F.4th at 584 (quoting *Mabie,* 663 F.3d at 329). And Atkins "'consistently demonstrated his unwillingness to participate in the proceedings by interrupting and arguing with the court, refusing to provide responsive answers, and insisting that [t]he trial is not going to happen.'" *Id.* (quoting *Atkins*, 52 F.4th 745, 751 (8th Cir. 2022) (internal quotation marks omitted). "[H]aving to deal with unorthodox defenses, 'wacky behavior,' and frivolous *pro se* arguments at trial is not serious obstructionist misconduct that warrants revocation of the defendant's Sixth Amendment right to represent himself – 'unless they threaten to forestall pretrial or trial proceedings.'" *Id.* at 585 (quoting *Smith,* 830 F.3d at 810.)

Here, I am not "an aid to a willing defendant," I am an organ of the State interposed between an unwilling defendant and his right to defend himself personally. *Faretta,* 422 U.S. at 820.

**Conclusion**

The optics of having (Option 1) a trial where the prosecutors argue one side and a defense attorney (even if alone) argues the other are far better than that of

(Option 2) a trial where the defendant is alone or (Option 3) a trial in which the defendant is absent. But in terms of effectiveness of representation, those options are fundamentally indistinguishable. The only difference is that, in Option 1, my ethical obligations and Mr. Wells's Sixth Amendment rights are being actively compromised.

The Court has selected Option 1.

Confronted with a defendant who does not want to participate in his own defense, the Court is – for the sake of facility – imposing unwanted counsel upon a defendant who has never asked for it. My presence will be cited (by this Court, by the government, by the jury, and by all appellate courts) that Damien Wells received a meaningful defense. My presence will be cited as proof that Mr. Wells received the effective assistance of counsel. It is my ethical obligation and responsibility to withdraw. My continued involvement in this case violates Mr. Wells's right to be free from unwanted counsel.

WHEREFORE, I again ask the Court for leave to withdraw as counsel. I ask the Court to recognize a standing objection to my participation in this trial under these conditions. I request a ruling on this motion *in limine* before the trial begins.

By: /s/ Richard H. McWilliams

**Federal Public Defender**
1620 Dodge Street, Ste 600
Omaha, NE 68102
(402) 221-7896
Rich_mcwilliams@fd.org